UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CRIMINAL ACTION NO. 5:10-cr-78-KSF-1


UNITED STATES OF AMERICA,                                            PLAINTIFF,


V.                                    **MAGISTRATE JUDGE'S REPORT
                                           AND RECOMMENDATION**


MAL ERIC WALTON,                                                      DEFENDANT.
        aka Fat Daddy,


***** ***** ***** ***** *****

Mal Eric Walton, proceeding *pro se*, brings this action pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. [Record No. 518]. Having been fully briefed, this matter is now ripe for review.  Consistent with local practice, the matter has been referred to the undersigned to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, it is recommended that Walton's motion be denied.

## I. FACTUAL & PROCEDURAL HISTORY

On November 18, 2010, Mal Eric Walton pled guilty to one count of conspiracy to distribute fifty (50) grams of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and one count of maintaining drug-involved premises within 1,000 feet of a school, in violation of 21 U.S.C. §§ 856(a)(1) and 860(a)(1). [Record No. 311]. As part of his plea agreement, Walton waived his right to appeal and collaterally attack his guilty plea, conviction, and

sentence.[1] [Record No. 313; *see also* Record No. 549, at 6]. The plea agreement also set forth

that because of his two prior drug felony convictions, and pursuant to 18 U.S.C. § 851, he faced

a statutory minimum sentence of life imprisonment.[Record Nos. 313; 549, at 5; 7].

Thereafter, prior to his sentencing hearing, the United States made a motion to depart

from the mandatory life sentence. [Record No. 550, at 16]. And, based on Walton's PSR, his

probation officer recommended his offense level be increased by four (4) levels based on his role

as a leader in a conspiracy which involved five (5) or more participants, pursuant to United

States Sentencing Guideline (U.S.S.G) §3B1.1(a). Walton's counsel, Fred Peters, filed two

objections to the Pre-Sentence Investigation Report (PSR). [*See* Record Nos. 416; 550, at 1-14].

Peters specifically objected to the imposition of the four-level enhancement based on Walton's

leadership role in the conspiracy. [Record No. 556, at 1]. During Walton's sentencing hearing,

the Court conducted an evidentiary hearing on counsel's objection to this enhancement and

ultimately overruled the objection. [*See* Record Nos. 416, 453; 550]. On February 25, 2011, the

Court sentenced Walton to 216 months imprisonment followed by five (5) years supervised

release on each count, to run concurrently. [Record No. 460].

On March 5, 2012, Walton filed the instant motion to vacate. [Record No. 518]. As

grounds, Walton sets forth two (2) claims: (1) trial counsel was constitutionally ineffective for

failing to object to the sentencing enhancement for a leadership role during sentencing; and (2)

trial counsel was constitutionally ineffective for failing to challenge the PSR and inadequately

represented Walton at sentencing. Because Walton's allegations were not supported by facts, the

Court ordered him to show case why his motion should not be dismissed. [Record No. 521]. In

---

[1] The Government has not asserted that Walton waived his right to file the current Section 2255 motion. The Court has not brought up waiver *sua sponte* because the government bears the burden of showing that the petitioner's plea was voluntary, intelligent, and knowing. Stumpf v. Mitchell, 367 F.3d 594, 600 (6th Cir. 2004), *vacated in part on other grounds by* Bradshaw v. Stumpf, 545 U.S. 175 (2005).

accordance with the Court's order, Walton has supplemented his motion to vacate, explaining his grounds for relief. [Record No 533]. Therein, he sets forth four (4) claims: (1) trial counsel was constitutionally ineffective for failing to apprise Walton of his PSR as required by Fed. R. Crim. P. 32, and as a result, Walton did not have the opportunity to review, read and/or challenge the PSR [Id. at 1]; (2) trial counsel was constitutionally ineffective for failing to advise Walton of all of the penalties he would incur as a result of his plea, and as a result, he did not enter into a voluntary and knowing plea of guilty [Id.]; (3) trial counsel provided ineffective assistance of counsel for failing to provide Walton a copy of his case file so he could adequately prepare the instant motion to vacate [Id. at 2]; and (4) by withholding discovery, counsel has provided ineffective assistance, and the government and the Court have committed a Brady violation for failing to disclose evidence material to Walton's guilt. [Id. at 2-3]. In close, Walton requests an evidentiary hearing to establish whether or not he has received a copy of his legal file, whether counsel was constitutionally ineffective, and to determine if he was able to view his PSR as required by Fed. R. Crim. P. 32.

The United States has responded in opposition to Walton's pending motion to vacate, as read with his supplement. [Record No. 556]. According to the United States, Walton has not set forth a factual basis for his ineffective assistance of counsel claims. [Id.]. The Government points out that Walton's counsel specifically objected to the PSR and, at sentencing, to the four-level enhancement based on Walton's leadership role in the conspiracy. In fact, the Government contends that the Court conducted an evidentiary hearing on this objection that lasted over two hours. As such, according to the Government, Walton fails to satisfy the requirement of Strickland, and his pending motion to vacate should be dismissed or denied. *See* Strickland v. Washington, 466 U.S. 668, 692 (1984).

Walton has replied to the Government's response, expounding on the factual basis of his pending claims. [Record No. 572]. Walton also sets forth three (3) new grounds for habeas relief: (1) the Court misjudged the impact of his interactions with various parties and assigned his leadership role in error [Id. at 7]; [(2) there was an overstatement of the drug quantity attributed to Walton, and as a result, his sentence was excessive [Id. at 7]; and (3) counsel provided constitutionally ineffective assistance by failing to advocate Walton's eligibility for benefit of the Fair Sentencing Act of 2010, and, because of this, his sentence is greater than necessary. [Id. at 8].

Significantly, in the midst of briefing the instant Section 2255 motion, on April 23, 2012, Walton filed a Motion for Reduction of his Sentence pursuant to the Fair Sentencing Reform Act. The United States initially opposed this motion [Record No. 538], but pursuant to the United States' Supreme Court's ruling in Dorsey v. United States, 132 S. Ct. 2321, 2329 (2012), amended its response to reflect that Walton's 216 month sentence did run afoul of the Fair Sentencing Act. [Record No. 590]. Accordingly, on September 13, 2013, the Court resentenced Walton to a term of 150 months imprisonment to be followed by five (5) years supervised release. [Record No. 662].

Walton has indicated to the Court that his resentencing did not render any of the claims pending in his Section 2255 motion moot. [Record Nos. 665; 676]. The matter is now submitted to the undersigned for a recommended disposition.

## II. STANDARD OF REVIEW

To prevail upon his pending motion for habeas relief under 28 U.S.C. § 2255, Walton must allege that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was

so fundamental as to render the entire proceedings invalid. <u>Mallett v. United States</u>, 334 F.3d 491, 496-97 (6th Cir. 2003), <u>cert. denied</u>, 540 U.S. 1133 (2004); *see also* <u>Moss v. United States</u>, 323 F.3d 445, 454 (6th Cir.), <u>cert. denied</u>, 540 U.S. 879 (2003). He must sustain his allegations by a preponderance of the evidence. This being a *pro se* petition, the undersigned is mindful that it is held to a less stringent standard than those drafted by legal counsel and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *See* <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

Walton cannot utilize this § 2255 motion to re-litigate an issue that was raised and considered on appeal, absent highly exceptional circumstances, such as an intervening change in the law. <u>Stephan v. United States</u>, 496 F.2d 527, 528-29 (6th Cir. 1974), <u>cert. denied</u>, 423 U.S. 861 (1975); *see also* <u>United States v. Prichard</u>, 875 F.2d 789, 790-91 (10th Cir. 1989). Nor may he use this § 2255 motion as a substitute for bringing a direct appeal. <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994). A federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998); <u>Peveler v. United States</u>, 269 F.3d 693, 698 (6th Cir. 2001); <u>Phillip v. United States</u>, 229 F.3d 550, 552 (6th Cir. 2000). To avoid procedural default, the petitioner must first show cause to excuse the failure to raise the claim on direct appeal and actual prejudice resulting from the alleged violation. <u>Reed</u> 512 U.S. at 354.

Importantly, this cause and prejudice showing is not a prerequisite for claims related to the ineffective assistance of counsel. In fact, ineffective assistance of counsel claims are not cognizable in a direct appeal because the record is generally inadequate to permit review. <u>Massaro v. United States</u>, 538 U.S. 500, 504-05 (2003); <u>United States v. Combs</u>, 369 F.3d 925, 940 (6th Cir. 2004); <u>United States v. Brown</u>, 332 F.3d 363, 368-69 (6th Cir. 2003). Such claims

are properly reviewed in this § 2255 proceeding. <u>Massaro</u>, 538 U.S. at 504; <u>Combs</u>, 369 F.3d at 940; <u>Brown</u>, 332 F.3d at 369; *see also* <u>Ciak v. United States</u>, 59 F.3d 296, 303-04 (2nd Cir. 1995) (noting that it is not realistic to expect appellate counsel, who served as the defendant's trial counsel, to raise an ineffective assistance of counsel claim on direct appeal).

III. ANALYSIS

A liberal construction of Walton's filings reveals a total of nine (9) claims for habeas relief. Walton presents six (6) of these claims in his initial motion to vacate and his supplement:

(I) Trial counsel was constitutionally ineffective for failing to object to the sentencing enhancement for a leadership role during sentencing;

(II) Trial counsel was constitutionally ineffective for failing to challenge the PSR and inadequately represented Walton at sentencing;

(III) Trial counsel was constitutionally ineffective for failing to apprise Walton of his PSR as required by Fed. R. Crim. P. 32, and as a result, Walton did not have the opportunity to review, read and/or challenge the PSR;

(IV) Trial counsel was constitutionally ineffective for failing to advise Walton of all of the penalties he would incur as a result of his plea, and as a result, he did not enter into a voluntary and knowing plea of guilty;

(V) Trial counsel provided ineffective assistance of counsel for failing to provide Walton a copy of his case file so he could adequately prepare the instant motion to vacate; and

(VI) By withholding discovery, counsel has provided ineffective assistance of counsel, and the government and the Court have committed a <u>Brady</u> violation for failing to disclose evidence material to Walton's guilt.

[Record Nos. 518, 533]. The final three (3) claims are presented for the first time in Walton's reply brief:

(VII) The Court misjudged the impact of Walton's interactions with various parties and assigned his leadership role in error;

(VIII) There was an overstatement of drug quantity attributable to Walton, and as a result, his sentence was excessive; and

(IX) Trial counsel provided constitutionally ineffective assistance of counsel by failing to advocate Walton's eligibility for benefit of the Fair Sentencing Act of 2010, and, because of this, his sentence is greater than necessary.

[Record No. 572].

Because Walton's petition is held to a less stringent standard than those drafted by legal counsel, the Court will address the grounds he asserts in his initial motion, his supplement, as well as his reply.[2] [Record Nos. 518, 533, 572].

<u>GROUNDS I-VI and IX - INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Walton's Grounds I-VI and IX all assert that he received ineffective assistance of counsel, and will be addressed, in turn, below. The purpose of the Sixth Amendment's guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding against him. <u>Strickland v. Washington</u>, 466 U.S. 668, 692 (1984). Any deficiencies in counsel's performance must be prejudicial to the defendant in order to constitute ineffective assistance. <u>Id</u>. Accordingly, in order for Walton to have his conviction overturned based upon his ineffective assistance of counsel claims, he must demonstrate two elements: (1) counsel's performance was so defective that he/she was not functioning as counsel as guaranteed under the Sixth Amendment; and, (2) prejudice resulted from the defective performance. <u>Id</u>. at 688.

---

[2] Generally, because Walton raised claims VII, VIII and IX for the first time in his reply, after the United States has already had the opportunity to address his grounds for habeas relief, these claims would be subject to waiver and barred from review. <u>Sanborn v. Parker</u>, 629 F.3d 554, 579 (6th Cir. 2010) *cert. denied* <u>Sanborn v. Parker,</u> 181 L. Ed. 2d 353, 2011 U.S. LEXIS 7726 (U.S., 2011) (declining to review arguments raised for the first time in Petitioner's reply in the briefing of his 28 U.S.C. § 2254 petition) (citing <u>Am. Trim, L.L.C. v. Oracle Corp.</u>, 383 F.3d 462, 477 (6th Cir. 2004); *see* <u>Sailing v. Budget Rent-A-Car Sys., Inc.</u>, 672 F.3d 442, 444 (6th Cir. 2012) ("Arguments raised only in reply, and not in the original pleadings, are not properly raised before the district court . . . " (*quoting* <u>Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.</u>, 598 F.3d 257, 275 (6th Cir. 2010)). In the interests of justice, because Walton is proceeding *pro se,* the Court will address the claims. This will also serve to fully dispose of Walton's habeas petition. Importantly, addressing the merits of Walton's claims does not run afoul of judicial economy.

Under this <u>Strickland</u> analysis, the performance inquiry focuses on whether counsel's assistance was reasonable considering the totality of the circumstances. <u>Id</u>. at 688. The prejudice inquiry focuses on whether the defendant is able to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. <u>Id</u>. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [d. at 692. Hence, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment. <u>Id</u>. at 691.

In the guilty plea context, while the performance prong of the <u>Strickland</u> test remains the same, to establish prejudice the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); *accord* <u>Griffin v. United States</u>, 330 F.3d 733, 737 (6th Cir. 2003). "A defendant challenging his attorney's conduct during plea bargaining, moreover, 'must show that counsel did not attempt to learn the facts of the case and failed to make a good faith estimate of a likely sentence. He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty.'" <u>Pough v. United States</u>, 442 F.3d 959, 966 (6th Cir. 2006) (quoting <u>United States v. Cieslowski</u>, 410 F.3d 353, 358-59 (7th Cir. 2005)); *see also* <u>Smith v. United States</u>, 348 F.3d 545, 553-54 (6th Cir. 2003). (counsel's failure to provide professional guidance to a defendant regarding his sentence exposure prior to rejecting a plea offer may satisfy both the performance and prejudice prongs of the *Strickland* test).

Significantly, both prongs of the test must be met for a finding of ineffective assistance, but courts are not required to conduct an analysis under both; the court need not address the question of competence if it is easier to dispose of the claim due to the lack of prejudice.

Strickland, 466 U.S. at 697; Baze v. Parker, 371 F.3d 310, 321 (6th Cir. 2004). Also, the reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland. 466 U.S. at 690. "Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" Pough 442 F.3d at 966 (*citing* Whiting v Burt, 395 F.3d 602, 617 (6th Cir. 2005)).

Ground I

In ground I, Walton asserts trial counsel was constitutionally ineffective for failing to object, at sentencing, to the sentencing enhancement imposed as a result of his leadership role in the conspiracy. [Record No. 518, at 5]. In his reply brief, Walton explains that he means counsel failed to present a proper, "Strickland level" objection. According to Walton, Peters should have argued precisely "why a four-level enhancement was improper, or why prosecution witness proffer statements were unreliable, or that the Movant's plea was factually circumscribed in extrapolation of alleged drug quantities by the tangible prosecution evidence." [Record No. 533, at 2].

As outlined in detail above, to establish ineffective assistance of counsel on this claim, Walton bears the burden of establishing that counsel's assistance was unreasonable considering the totality of the circumstances. Strickland 466 U.S. at 688. Walton must also establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Id. at 694. Walton cannot meet this burden.

First of all, Walton's claim is inaccurate. The record clearly reveals that Peters specifically objected, in written objections before sentencing and at the sentencing hearing, to the four-level enhancement of Walton's sentence based on the finding that he acted in a leadership role in the

conspiracy. [*See* Record Nod. 416; 550, at 13-16]. The Court conducted an evidentiary hearing specifically on this objection. [Id. at 16-93]. Beyond Walton's assertion of deficiency, there is no evidence in support of his argument that counsel's performance in making this objection was unreasonable.

Even assuming, without finding, that counsel's representation in making this objection did not meet the standard reasonably to be expected under these circumstances, this claim clearly fails on the prejudice element of <u>Strickland</u>. There is no evidence counsel's alleged error affected the outcome of the Court overruling the objection. In overruling Peters' objection, the Court relied on the facts Walton admitted in his plea agreement and the requirements of United States Sentencing Guideline § 3B1.1(a). According to U.S.S.G. § 3B1.1(a), "…if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels." The Court reasoned that Walton's plea agreement, on its own, affirmatively indicated that Walton's conspiracy involved five (5) participants and could be sufficient for imposition of the four-level enhancement, reasoning as follows:

> In the plea agreement, Mr. Walton admits that he sold small amounts of crack cocaine, pills, and marijuana from inside the – grocery store. That's one. Mr. Walton also utilized numerous individuals…as drug runners…for him during the same time frame. Some of these individuals include but are not limited to Antonio Robinson, two: Ralph Black, three, Eric Badgett, four. Then we go down to Jashaun Thomas, Walton also allowed – and I am looking at the plea agreement here – Walton also allowed several individuals including but not limited to Jashaul Thomas and Eric Badgett, to sell drugs inside Oliver's Grocery. Walton agreed to sell 50 grams or more of crack cocaine with Thomas and others and so we can say we have five there, which is sufficient..

[Record No. 550, at 92-93].

In assessing Walton's ineffective assistance of counsel claim, this Court cannot now find that had counsel argued the way Walton now contends, there is a reasonable probability of a

different outcome. No amount of counsel's artful pleading would have changed the facts as they had been admitted by Walton in the plea agreement. Walton simply fails to provide sufficient factual or legal basis to find ineffective assistance of counsel on ground I.

Ground II

Similarly, Walton asserts trial counsel provided ineffective assistance of counsel for failing to challenge his PSR and inadequately represented him at sentencing. As with ground I, this claim is not supported by fact. First of all, the record clearly establishes that Peters objected, in written objection to the PSR before sentencing. As discussed previously, counsel specifically objected to the four-level enhancement of Walton's sentence based on the finding that he acted in a leadership role in the conspiracy. [*See* Record Nos. 416; 550, at 13-16][3]. Counsel also objected to the computation of Walton's criminal history category under 21 U.S.C. § 851. [Record. No. 550, at 3-6]. The court conducted a two (2) hour hearing on Walton's sentencing, during which counsel affirmatively responded to the Court's questioning that he had reviewed the PSR with Walton. [Record No. 550, at 13]. Moreover, a review of the record reveals that counsel provided competent representation during Walton's sentencing. During the hearing, counsel clearly articulated an argument based on Walton's personal history and characteristics in efforts to convince the Court to sentence him within the applicable guideline range [Record No. 550, at 94-96]. In addition, counsel made clear, appropriate objections throughout the hearing and specifically during the Government's questioning of Agent Mercer, the one (1) witness called to prove Walton as a leader of the conspiracy. [Record No. 550, at 17-61]. Finally, it must be noted that prior to the hearing, counsel successfully worked with Walton and the United States to negotiate a motion to depart from the mandatory life sentence Walton was facing based

---

[3] Counsel's objections are not filed into the record, but may be inferred from the United States response to Peters' objections and the Court's discussion of his objections at sentencing. [Record No. 416].

on his past felony drug convictions. Accordingly, Walton only faced a guideline range of 168 to 210 months. [Record No. 550, at 16; 113]. Ultimately, Walton received a sentence of 216 months, a sentence only slightly above this guideline range and far less than the life sentence he originally faced. [Record No. 550, at 16].

Looking at Walton's argument in light of the record, this Court cannot find counsel's representation during sentencing to be deficient. Moreover, Walton makes no showing as to how counsel's alleged errors prejudiced the outcome of his sentencing. Accordingly, Walton has failed to meet his burden under <u>Strickland</u>, and ground II provides no basis for habeas relief.

<u>Ground III</u>

Related to grounds I and II, in ground III, Walton alleges that trial counsel was constitutionally ineffective for failing to apprise him of his PSR as required by Fed. R. Crim. P. 32, and as a result, he did not have the opportunity to review, read and/or challenge the PSR. This claim, again, is unsupported by fact. Counsel indeed challenged the PSR, raising two (2) objections. Based on these objections, the court conducted a two (2) hour hearing on Walton's sentencing. In addition, during this hearing, counsel affirmatively responded to the Court's questioning that he had reviewed the PSR with Walton. [Record No. 550, at 13]. On these facts, Walton is unable to establish that counsel's performance in reviewing/challenging the PSR is deficient. Moreover, Walton makes no argument as to how his failure to personally read and challenge the PSR prejudiced his the outcome of his sentencing. Walton simply cannot prove ineffective assistance of counsel as alleged in ground III. Therefore, it provides no basis for habeas relief.

<u>Ground IV</u>

In ground IV, Walton alleges that trial counsel provided constitutionally ineffective assistance of counsel for failing to apprise him of all the penalties he would incur as a result of his plea, and as a result, his plea was unknowing and involuntary. In support, Walton alleges that counsel failed to advise him of all the maximum penalties, "including imprisonment time, enhancements, fines, and or supervised release" in violation of Fed. R. Crim. P. 11.[4] [R. 533, at 2]. This representation is disputed by the record.

The record reveals that Walton was well aware that at the time of his guilty plea, he faced a minimum life sentence based on his two prior drug felonies pursuant to the sentencing enhancement set forth in 21 U.S.C. § 851. Prior to his rearraignment proceeding, the United States filed notice of its intent to seek an enhanced sentence pursuant to 21 U.S.C. § 851 into the record. [Record No. 307]. The Government also included reference to the 851 enhancement in Walton's guilty plea. [Record No. 549, at 7]. In addition, at the time Walton pled guilty, both the United States and the Court summarized the possible penalties Walton faced. The Assistant United States Attorney summarized the potential penalties Walton faced as follows:

> With regard to count one, because the defendant has two prior drug felony convictions, the statutory punishment is not less than life in prison and a fine of not more than $8 million...with regard to count three, because the establishment was within 1,000 feet of a school, the statutory punishment is not less than ten years in prison nor more than life in prison, a fine of not more than $8 million, or both, and a term of supervised release of not less than ten years...Also, the defendant acknowledges that he does have two prior drug felony convictions which are final and is therefore subject to the enhanced statutory penalty...he acknowledges that the previous notice that's been field is sufficient.

[4]According to Fed. R. Crim. P. 11, (b)(1()(H), a defendant entering a guilty plea must be advised of "any maximum possible penalty, including imprisonment, fine, and term of supervised release."

[Record No. 549, at 6-8]. The Court affirmed Walton's understanding that he indeed had two prior drug felonies which subjected him to the life sentence as summarized by the United States. The Court also inquired as tot he voluntariness of Walton's plea:

> The Court: All right. Has anyone – let me ask you again, has anyone made any promises to you that are different from those that are set out in the plea agreement?
>
> Walton: No.
>
> The Court. Okay. Has anyone attempted to force you to plead guilty?
>
> Walton: No.

The Court then reaffirmed Walton's understanding of the possible penalties he faced in pleading guilty:

> The Court All right. Now, I want to talk to you about the statutory punishment you are looking at here -
>
> Walton: Yes.
>
> The Court: –even though Miss Hawkins has already mentioned it. Now with regard to count one, because you have two prior drug felony convictions, you are looking at a punishment of not less than life in prison, a fine of not more than $8 million and a mandatory special assessment of $100. Do you understand that?
>
> Walton: Yes.
>
> The Court: Alright. Now, with regard to count three, you are looking at a statutory punishment of not less than ten years, no more than life, a fine of not more than $8 million, or both, and a term of supervised release of not less than ten years and a special assessment in the amount of $100. Do you understand that?
>
> Walton: Yes.

[Record No. 549, at 8-10]. The fact that after Walton's rearraignment the United States moved to depart from his minimum life sentence, and that his offense level was later increased by his role as a leader of the conspiracy does not change that Walton understood at the time of his plea

that he was facing a statutory minimum life sentence. [*See* Record No. 550, at 16]. His claim to the contrary is simply unconvincing. Hence, Walton has failed to prove any deficiency in counsel's performance based on his misunderstanding of the penalties he faced at the time of his rearraignment.

Walton also fails on the prejudice prong of the <u>Strickland</u> test. As mentioned above, to establish the prejudice prong of the <u>Strickland</u>, Walton "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); *accord* <u>Griffin v. United States</u>, 330 F.3d 733, 737 (6th Cir. 2003). Walton has made no claim that he would have insisted on going to trial had he understood all of the "sentencing enhancements" he faced at the time of sentencing. In fact, Walton explains in his reply that he "clearly intended to plead to conspiracy as indicated in the indictment" though he disputes the drug amount attributed to him for sentencing purposes. [Record No. 572, at 1]. Ground IV is not a basis for habeas relief.

<u>Ground V</u>

In Ground V, Walton claims counsel provided constitutionally ineffective assistance for failing to provide Walton a copy of his case file so he could adequately prepare the instant motion under Section 2255. This claim is unsupported by the record and not a basis for relief. Prior to filing the instant motion, Walton filed a motion requesting a copy of his legal file, indicating he needed this file to prepare a motion to vacate pursuant to 28 U.S.C. § 2255. [Record No. 504]. In response, counsel certified that Walton had been mailed a copy of the non-classified portion of his legal file on more than one occasion. [Record Nos. 506; 513; 515]. Counsel went as far as to provide correspondence he sent to Walton which documented the fact that he had previously provided him the case file as well as a supporting affidavit. [Record Nos.

506-1; 513]. The Court denied Walton's motion as moot, finding that counsel had previously provided Walton with his file. [Record No. 510]. Walton then filed a motion for the court to reconsider its ruling, asserting that counsel's representation he had previously furnished Walton with his case file were untrue. [Record Nos. 511; 516]. Based on counsel's documentation, sworn statements, and credibility, the Court denied Walton's motion to reconsider. [Record No. 516]. At this stage, Walton merely makes bald, unsupported assertions that he never received his case file. This Court also relies on counsel's documentation and certifications that Walton has been provided a copy of his case file. There is no basis on which to find deficient performance under Strickland.

Moreover, even assuming Walton's failure to receive his case file in no way prejudiced the proceeding against him. In order to find ineffective assistance of counsel as set out by Strickland, Walton must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding against him would have been different. Strickland, 466 U.S. at 694. The proceeding at issue is not the instant Section 2255 motion, but rather, Walton's criminal conviction and sentence. In fact, in § 2255 proceedings, there is no constitutional right to counsel. see Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002). The fact that Walton allegedly had no access to his case file after the disposition of his criminal matter necessarily could not have affected his guilty plea and sentence, as those proceedings had already occurred. Indeed, he has made no argument to that effect. Ground V is simply not a basis for relief.

Ground VI

Relatedly, Walton claims counsel, the court, and the government have committed a Brady violation for failing to provide him with his case file. He asserts that his lack of access to his

case file effectively results in counsel's, the court's, and the Government's failure to disclose evidence favorable to him. He provides little context to his claim, but a brief review of the record reveals it has no merit.

First of all, there is simply no support for Walton's claimed violation of Brady v. Maryland, 343 U.S. 83 (1963). Brady governs the prosecution's failure to disclose evidence favorable to an accused which is either material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Id. at 87. Walton present no more than a bald allegation of error here. During sentencing, the United States affirmatively indicated that if it was in possession of any evidence exculpatory to Walton's guilt, it would have been provided to defense counsel. [Record No. 550, at 72]. On these facts, there is simply no basis to find that the prosecution was in possession of evidence favorable to Walton's defense.

Additionally, a review of Walton's pleadings reveals he may be confused as to his access to the confidential parts of his case file. The record reveals, however, that Walton was never actually denied access to any information contained therein. As detailed in the discussion of Ground V, counsel certified that he had provided Walton all non-confidential parts of his case file on numerous occasions. In response to Walton's request for his case file, it should be noted that counsel also filed a Motion to Release Discovery to Defendant, effectively asking the Court to set aside a previously imposed protective order which precluded counsel from sending Walton certain confidential parts of his file. [Record No. 507]. The Government objected, and the Court ultimately denied counsel's motion, reasoning that Walton previously had access to all of these confidential materials and there was a protective order in place to prevent the disclsure of materials in place to protect cooperating witnesses. [Record No. 510]. The fact that certain materials could not be disseminated post trial, pursuant to the protective order, has no bearing on

the fact that Walton previously had the opportunity to review all of his discovery materials with defense counsel. Hence, beyond Walton's bald assertion that he has been denied access to evidence favorable to his defense, there is no evidence in the record on which to find that Walton did not have access to his entire case file, or that the Government withheld evidence favorable to Walton's defense in violation of Brady v. Maryland. The claim is baseless, and, accordingly, ground VI provides no basis for habeas relief.

Ground IX

In Ground IX, Walton argues that trial counsel provided constitutionally ineffective assistance of counsel for failing to argue his eligibility for benefit of the Fair Sentencing Act at his sentencing on February 25, 2011. Based on the law at the time of Walton's sentencing, this is incorrect. Prior to the United States' Supreme Court's ruling in Dorsey v. United States, 132 S. Ct. 2321, 2329 (2012), the Fair Sentencing Act was not considered retroactively applicable. In United States v. Carradine, 621 F.3d 575 (6th Cir. 2010), the United States Court of Appeals for the Sixth Circuit specifically held that the Fair Sentencing Act does not apply to anyone who committed their crack offense before August 3, 2010. Walton's indictment alleged that he committed the crimes to which he eventually pled guilty to have occurred from July 2006 through June 2010. [Record Nos. 243; 311]. It was not until after Walton's sentencing hearing that the Supreme Court held that the Fair Sentencing Act of 2010 applies to defendants who are initially sentenced after the Act's enactment date. *See* Dorsey, 132 S. Ct. at 2335. Accordingly, it was reasonable for trial counsel to choose not to argue Walton's eligibility to the Act. Walton has failed to establish deficient performance under Strickland.

Significantly, it must be noted that Walton's subsequently filed motion to be re-sentenced under the Fair Sentencing Act was granted by this Court on February 5, 2013, and his sentence

was reduced based on the Fair Sentencing Act from 216 months to 150 months incarceration. [Record Nos. 591; 662]. Accordingly, though counsel committed no error in failing to argue Walton's eligibility for the Fair Sentencing Act at sentencing, any prejudice resulting from the subsequent retroactive applicability of the Act has been rectified. Therefore, claim IX provides Walton no basis for further relief.

REMAINING CLAIMS

Notably, because Walton did not file a direct appeal, the merits of his remaining claims should not be reviewed by this Court. *See* Reed v. Farley, 512 U.S. 339, 354 (1994). As Walton did not assert these claims until his reply, however, the Government did not assert the defense of procedural default to prevent such review. The Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. Lambrix v. Singletary, 520 U.S. 518, 525 (1997). In line with Sixth Circuit precedent, this Court will proceed with review of Walton's remaining two (2) claim on the merits as the procedural default analysis is complicated and unnecessary to the Court's determination of the case. Hudson v. Jones, 351 F.3d 212, 215-16 (6th Cir. 2003); *accord* Mahdi v. Bagley, 522 F.3d 631, 635 (6th Cir. 2008).

Ground VII

In ground VII, Walton alleges the Court committed error in enhancing his offense level by four (4) levels pursuant to U.S.S.G. § 3B1.1(a). In support, Walton asserts the Court's use of "five individuals" to deem him a leader of the conspiracy as "arbitrary."[Record No. 572, at 6-7]. This argument is without merit as Walton's understanding of the sentencing enhancement is in error.

First of all, the definition of a leadership or organizational role is broad and does not require that defendant have direct control over others in conspiracy. United States v Horne (1993, CA8 Minn) 4 F3d 579, cert. denied (1994) 510 US 1138 (1994). The commentary to U.S.S.G. § 3B1.1provides:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

U.S.S.G. § 3B1.1, comment. (n.4). Furthermore, according to U.S.S.G. § 3B1.1(a),, "…if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels."

In Walton's case, the Court specifically relied on the facts as he admitted in his plea agreement in determining his leadership role and calculating the the number of participants in his conspiracy. The Court found Walton's plea agreement, on its own, to be sufficient for imposition of the four-level enhancement, but noted that even more evidence existed in support of the enhancement. The Court reasoned as follows:

> In the plea agreement, Mr. Walton admits that he sold small amounts of crack cocaine, pills, and marijuana from inside the – grocery store. That's one. Mr. Walton also utilized numerous individuals…as drug runners…for him during the same time frame. Some of these individuals include but are not limited to Antonio Robinson, two: Ralph Black, three; Eric Badgett, four. Then we go down to Jashaun Thomas, Walton also allowed – and I am looking at the plea agreement here – Walton also allowed several individuals including but not limited to Jashaul Thomas and Eric Badgett, to sell drugs inside Oliver's Grocery. Walton agreed to sell 50 grams or more of crack cocaine with Thomas and others and so we can say we have five there, which is sufficient. But the Agent Mercer talked in

terms of several other runners[5]…O'Dell Cosby is six, Richard Davis is seven….So I don't see any reason to go any further with this. I am convinced the probation officer properly, in paragraph 23, charged the four-point adjustment to Mr. Walton.

[Record No. 550, at 92-93].

In the current proceeding, Walton has not pointed this Court to an error of constitutional magnitude or one which renders his proceeding invalid or proof that his sentence was imposed outside the statutory limits based on the court's reasoning here. Indeed, the court's application of the requirements of U.S.S.G. § 3B1.1 to the facts as Walton stipulated to in his plea agreement is reasonable and sound. Walton's plea specifically indicated he "utilized" numerous individuals as 'drug runners," he allowed individuals to sell drugs in his grocery store, he personally sold drugs from inside his grocery story, and enumerated four additional participants to be engaged in the conspiracy to sell drugs. Moreover, testimony adduced at the sentencing hearing indicated a sixth and seventh participant in the conspiracy. Accordingly, Walton has failed to meet his burden of proving error in the Court's reasoning on his U.S.S.G. § 3B1.1 enhancement, and ground VII provides no basis for habeas relief.

Ground VIII

In ground VIII, Walton alleges the court committed error in attributing 50 grams of crack cocaine in determining his sentence, and as a result, he received a disproportionately high sentence. According to Walton "the alleged gram count of 50 grams, as stated in the plea, was a concession in name only." According to Walton, there was only quantifiable evidence of 2.8

---

[5] At the hearing on Peters' objection, the Government called Agent Eric Mercer, a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who had participated in investigating Walton's drug-trafficking activity. The United States asked Agent Mercer about personal surveillance, a pole camera that was set up for several months, and statements by Walton's co-defendants which revealed Walton had allowed co-defendants to use his vehicle, a Cadillac, to allow runners, these co-defendants, to deliver narcotics in and around the surrounding area. [Record No. 550, at 23-24]. The Court asked Mercer, "Who specifically did you talk to who told you that with the defendant's permission they used his automobile to do drug deals?" [Id. at 24 ;15-17]. Mercer replied with three names: Antonio Robinson, O'Dell Cosby, and Richard Davis. [Id., at 24 ;15-25-25:1-3].

grams of the drug sold by him, and the Court's assignment of 196-240 grams of crack cocaine was not supported by a preponderance of the evidence. This argument is misguided and disputed by the record, as Walton stipulated to a relevant conduct drug quantity of 196-240 Grams of cocaine base (crack cocaine).

While Walton pled guilty to one count of conspiracy to distribute fifty (50) grams of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b0(1)(A), in his written plea agreement, he and the Government agreed that the total amount of relevant conduct Walton would be responsible for was between 196 and 240 grams of the drug. [Record Nos. 313;  549, at 6[6]]. The sentencing court was well within its discretion to accept this relevant conduct determination as fact. According to U.S.S.G. §6B1.4(a), a plea agreement may be accompanied by a written stipulation of facts relevant to sentencing, including the relevant facts and circumstances of the actual offense conduct and offender characteristics. According to U.S.S.G. §6B1.4(a)(d), the court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing. When the drug quantities provided to the court by the PSR are not challenged and when the PSR utilizes the drug amounts contained in the plea agreement, the court has every reason to believe that those quantities provided a reliable basis for determining a defendant's sentence.  United States v. Treadway, 328 F.3d 878, 886 (6th Cir. 2003) (citing United States v. Tarwater, 308 F.3d 494, 518 (6th Cir. 2002)).

Here, the relevant conduct determination as contained in the PSR was never challenged. In addition, the Defendant affirmatively accepted the 196-240 gram count when entering his guilty plea. During rearraignment, the United States explicitly stated that the parties had agreed

_____

[6] On the record, the AUSA mispoke, stating that the relevant conduct was from 196 to 840 grams. The PSR explains that paragraph 7c of the written plea agreement contained a typographical error with regard to the amount of cocaine base. The plea agreement should read that Walton's relevant conduct included 196 grams andnot more than 240 grams of crack cocaine.

to this amount of relevant conduct. And, before taking Walton's plea, the court affirmed with

Walton that the United States had accurately summarized his plea agreement as he understood it.

[Record No. 549, at 6]. Thereafter, during the rearraignment proceeding, the United States

summarized the facts which the Government could prove against Walton that he stipulated to in

his plea agreement. The United States summarized as follows:

> Between January 1st of 2007 and June 15th of 2010, Walton sold small amounts of crack cocaine, pills, including Lortabs, and marijuana from inside Oliver's Grocery. Walton also utilized numerous individuals as drug runners for him during the same time frame. Some of the individuals include but are not limited to Antonio Robinson, Ralph black and Eric Badgett. Walton also agreed with Jashaun Thomas and others to obtain large amounts of crack cocaine for the purpose of distributing crack cocaine in Paris, Kentucky, and surrounding areas....Walton agreed to sell 50 grams or more of crack cocaine with Thomas and others. Walton allowed 500 grams or more of crack cocaine to be sold in and outside the area of Oliver's Grocery by others between approximately January 1st, 2007 and June 15th, 2010. On March 19, 2009, State Police utilized a confidential informant to make a purchase of a quantity of pills containing Hydrocodone from Mr. Walton and Ralph Black...The informant then purchased 34 pills from Walton and Black for $750 inside of the grocery store...Then on April 15th, 2009, State Police utilized an informant to make a purchase of cocaine form Mr. Walton. The informant met Walton inside of Oliver's Grocery store and purchased approximately 1 gram of cocaine for $100 from him. The suspected cocaine was sent to the State Police Forensic Laboratory for analysis and determined to be 1.5 grams of cocaine...And finally, on June 7th, 2009, State Police utilized an informant to make an undercover purchase of crack cocaine and a firearm from Walton and Mr. Fields...The suspected cocaine was submitted to the Kentucky State Police Forensic Laboratory and determined to be 5.4 grams of crack cocaine.

[Record No. 549, at 15-18]. The Court then affirmed that Walton believed the Government

would be able to prove each of these facts against him. [Record No. 549, at 18].

In addition, Walton's PSR utilized the plea agreement's relevant conduct determination.

This 196 gram to 240 gram relevant conduct agreement resulted in a base offense level of 30.

The offense level was increased by two (2) points based on the grocery store's close proximity to

Paris High School, increased by four (4) pointed based on Walton's leadership role, and

decreased by three 3) points based on his acceptance of responsibility, resulting in an offense level of 33. With a criminal history category of III, this resulted in a guideline range of 168-210 months incarceration.[7] Walton ultimately received a sentence of 216 months, only six (6) months above the guideline range. His sentence has since been significantly reduced to 150 months.

Having reviewed the record and applicable law, this Court finds Walton has failed to allege an error of constitutional magnitude or prove that his sentence was imposed outside the statutory limits. Accordingly, ground VIII provides no basis for habeas relief.

PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING

It is unnecessary to grant Walton's request for an evidentiary hearing. A federal court reviewing a Section 2255 motion should not conduct a hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Fontaine v. United States, 411 U.S. 213, 215 (1973) (citation omitted). *See also* Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996) (holding that "evidentiary hearings are not required when . . . the record conclusively shows that the petitioner is entitled to no relief."). Only "where there is a factual dispute" must "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999) (citing Paprocki v. Foltz, 869 F.2d 281, 287 (6th Cir.1989)). Here, the Court's judgment denying Walton's habeas petition does not turn on factual assertions. His claims regarding ineffective assistance of counsel and error by the court are all resolved by looking at the record alone. Thus, the Court need not conduct an evidentiary hearing to adjudicate the instant Section 2255 motion.

---

[7] Before the United States' downward departure motion, Walton's guideline advisory range was life.

## IV. CONCLUSION

For the reasons set forth above, it is recommended that Walton's Motion to Vacate, Set Aside, or Correct his Sentence [Record No. 518], including the claims raised in his supplement and reply [Record Nos. 533; 572] as well as his request for an evidentiary hearing be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation.  Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Ann, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller V. Currie, 50 F.3d 373, 380 (6th Cir.1995).

Signed April 18, 2014.



Signed By:

Edward B. Atkins

United States Magistrate Judge